The PEOPLE of the State of ColoradO,
Plaintiff–Appellee,

v.

Shala L. BLESSETT, Defendant–
Appellant.

No. 04CA0434.

Colorado Court of Appeals,
Div. IV.

April 20, 2006.

As Modified on Denial of Rehearing
July 13, 2006.

---

\* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2005.

John W. Suthers, Attorney General, Cheryl Hone, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Ann M. Aber, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

CASEBOLT, J.

Defendant, Shala L. Blessett, appeals the judgment of conviction entered upon jury verdicts finding her guilty of false reporting of explosives, a class six felony, and impeding the staff of an educational institution, a class three misdemeanor. Defendant also appeals her aggravated range sentence. We affirm.

On a school-day morning, a female caller telephoned four bomb threats to an elementary school, prompting evacuations of the building. Police searched the school but found nothing.

An investigation revealed that the calls had been made from inside the school. The two secretaries who received the bomb threats recognized the caller's voice as that of defendant, a teacher's aide at the school. Defendant was also seen using the telephone in the teacher's lounge during the times that two of the calls were made. That afternoon, police asked defendant to come to the police station for questioning. After approximately one hour of questioning, defendant confessed to making the calls.

The trial court denied defendant's motion to suppress her confession as involuntary. The jury convicted defendant, and the trial court imposed an aggravated range sentence of two years for false reporting of explosives, to run concurrently with a six-month sentence for impeding the staff of an educational institution. This appeal followed.

I.   Challenges for Cause

Defendant first contends the trial court erred in denying her challenges for cause to two prospective jurors. We disagree.

The decision concerning a challenge for cause to a prospective juror is within the sound discretion of the trial court and will be overturned on appeal only when the record reveals an abuse of discretion. *Carrillo v. People*, 974 P.2d 478 (Colo.1999); *People v. Baca*, 109 P.3d 1005 (Colo.App.2004). In determining whether the trial court abused its discretion, an appellate court should examine the entire voir dire examination. *People v. Abbott*, 690 P.2d 1263 (Colo.1984).

A trial court must sustain a challenge for cause if the prospective juror's state of mind evinces enmity or bias toward the defendant or the prosecution. But a prospective juror should not be disqualified because of a previously expressed opinion if the court is satisfied that the juror will render an impartial verdict based on the law and evidence presented at trial. Section 16–10–103(1)(j), C.R.S.2005; Crim. P. 24(b)(1)(X); *People v. Sandoval*, 733 P.2d 319 (Colo.1987); *People v. Shreck*, 107 P.3d 1048 (Colo.App. 2004).

A.   Challenge to Juror K

Defendant contends the trial court erred in denying her challenge for cause to Juror K because the juror believed defendant was guilty in light of her confession to the charged crimes. We disagree.

A trial court must sustain a challenge for cause if a prospective juror is unable or unwilling to accept the basic principles of criminal law. *Morrison v. People,* 19 P.3d 668 (Colo.2000); *People v. Wilson,* 114 P.3d 19 (Colo.App.2004). However, the challenge should not be sustained if subsequent examination of the prospective juror clearly demonstrates that the juror's original statement was the product of mistake, confusion, or some other factor unrelated to the juror's ability to render a fair and impartial verdict. *People v. Russo,* 713 P.2d 356 (Colo.1986).

Here, defense counsel challenged the juror based on the following exchange:

[JUROR]: If somebody's caught for a crime and is a suspect, there's a pretty good reason why.

[DEFENSE COUNSEL]: Do you think automatically because somebody's arrested that means they did it?

[JUROR]: No.

[DEFENSE COUNSEL]: But you just said—

[JUROR]: There could be a good reason why somebody's arrested. You're not arrested for no reason.

[DEFENSE COUNSEL]: Do you think there's a reason [defendant] is sitting here right now?

[JUROR]: Probably.

[DEFENSE COUNSEL]: By that, do you mean she must have done something because she's sitting here?

[JUROR]: Probably.

Defense counsel challenged the juror asserting that "she clearly stated that she thinks if somebody's sitting here, they did something wrong."

The trial court conducted further voir dire. When it discussed the presumption of innocence with the juror, it was apparent she believed it was undisputed that defendant had already confessed to the crime:

[THE COURT]: All [a defendant] must do is appear, sit at that table and they are presumed innocent. Do you have a problem with that?

[JUROR]: I don't have a problem with that. That wasn't what I was asked.

[THE COURT]: I see.

[JUROR]: You asked me that question before I knew there was a confession. I'm just being honest.

[THE COURT]: And you're saying perhaps you thought she had done something because there was a confession.

[JUROR]: Yes.

[THE COURT]: [If I asked you right now], what would the verdict be?

[JUROR]: I'm being honest, right now. Unfortunately, I would say that I have to do a verdict that was guilty. I mean, I haven't heard any other evidence. But there was a confession.

The prosecutor then explained to the juror that any mention of a confession was merely hypothetical for purposes of voir dire and that it was unknown whether defendant had confessed:

[PROSECUTOR]: Now, just because [defense counsel] said that there was a confession ... there may or may not be a confession because we don't know. We don't know what the evidence is. [With] [t]hat information, are you still biased toward one side or the other?

[JUROR]: No.

[PROSECUTOR]: Now, not having any information in front of you because what I said and what [defense counsel] said when we were selecting the jury is not evidence. When the judge asked you [right now] what would [the verdict] be?

[JUROR]: Provided what you just said that what I just heard, the confession and all the events, I would have to say not guilty.

We conclude that Juror K's statements with respect to the presumption of innocence were based on a hypothetical assertion that defendant had confessed to committing the crimes. When that assumption was removed, there was no indication that the juror would be unable to render a fair and impartial verdict or would be unwilling to honor the presumption of innocence.

*People v. Wilson, supra,* on which defendant relies, does not dictate a contrary result. There, the juror never indicated that

he could honor the presumption of innocence, nor was there any rehabilitation by subsequent voir dire. The opposite is true in this case.

Hence, the trial court did not abuse its discretion in denying the challenge for cause.

To the extent that defendant asserts the challenge should have been sustained because the juror stated that if defendant confessed, she believed defendant was automatically guilty without examining any other evidence in the case, we note that this was not the basis of the challenge in the trial court. Hence, we decline to address that assertion for the first time on appeal. *See People v. Cevallos–Acosta*, 140 P.3d 116 (Colo.App. 2005)(court declined to address challenge to juror based on argument not previously presented in the trial court).

### B. Challenge to Juror B

■ Defendant contends the trial court erred in denying her challenge for cause to Juror B because his statements indicated that he would give more weight to the testimony of police officers. We do not agree.

■ A trial court is not required to dismiss a juror simply because the juror has indicated a possible source of bias. *People v. Drake*, 748 P.2d 1237 (Colo.1988); *People v. Tally*, 7 P.3d 172 (Colo.App.1999). Rather, the question is whether the juror can set aside preconceived notions and base a decision on the law and the evidence. *People v. Drake, supra.*

Here, Juror B stated, "If it comes down to it, to a police officer's word and someone I don't know ... I would go with the police officer's word, in all honesty." However, the juror agreed that police officers were human and could be wrong, and he indicated that he would listen to the witnesses individually and assess their credibility based on what they said.

Although this juror's statements evinced a belief, in the abstract, that police officers are more credible than other witnesses, he indicated that he could decide the case based on the law and the evidence. Thus, the trial court did not abuse its discretion in denying the challenge for cause. *See People v. Vigil,*

718 P.2d 496 (Colo.1986)(no abuse of discretion to deny challenge for cause where juror inclined to give more weight to testimony of police officers); *People v. Cevallos–Acosta, supra* (no error to deny challenge for cause to juror who said he would place authority on the testimony of a police officer over anyone else, because juror said he could probably be fair); *People v. Richardson,* 58 P.3d 1039 (Colo.App.2002)(no abuse of discretion to deny challenge for cause to juror whose comments indicated a belief that police are more credible than other witnesses, because there was evidence juror would base decision on the law and evidence).

### II. Oral Confession

Defendant next contends the trial court erred in denying the motion to suppress her oral confession to the detectives. We disagree.

■ A trial court's ruling on a motion to suppress presents a mixed question of fact and law. *People v. Medina,* 25 P.3d 1216 (Colo.2001); *People v. Arroya,* 988 P.2d 1124 (Colo.1999). An appellate court must defer to the trial court's findings of fact if they are supported by competent evidence in the record, but will review its conclusions of law de novo. *People v. Garcia,* 11 P.3d 449 (Colo. 2000); *People v. Arroya, supra.*

■ A defendant's confession must be voluntary to be admissible. *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); *People v. Fordyce,* 200 Colo. 153, 612 P.2d 1131 (1980). The burden is on the prosecution to prove by a preponderance of the evidence that the confession was voluntary. *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); *People v. McIntyre,* 789 P.2d 1108 (Colo.1990).

■ The determination of whether a confession is voluntary is based on the totality of the circumstances. *People v. Mendoza–Rodriguez,* 790 P.2d 810 (Colo.1990); *People v. Corbett,* 190 Colo. 388, 547 P.2d 1264 (1976). The totality of the circumstances refers to the details surrounding and inhering in the interrogation, including: (1) whether the defendant was in custody or was free to leave

and was aware of his or her situation; (2) whether *Miranda* warnings were given prior to any interrogation and whether the defendant understood and waived his or her *Miranda* rights; (3) whether the defendant had the opportunity to confer with counsel or anyone else prior to the interrogation; (4) whether the challenged confession was made during the course of the interrogation or was volunteered; (5) whether any overt or implied threat was directed at the defendant; (6) the method and style employed by the interrogator in questioning the defendant and the length and location of the interrogation; (7) the defendant's mental and physical condition immediately prior to and during the interrogation; and (8) the defendant's educational background, employment status, and prior experience with law enforcement and the criminal justice system. *People v. Gennings,* 808 P.2d 839 (Colo.1991).

Defendant contends the trial court's finding that her confession was voluntary is not supported by the record. Specifically, she contends she was in custody because a reasonable person in her position would not have felt free to leave the police station; she did not knowingly, intelligently, and voluntarily waive her right to remain silent or right to counsel; and her confession was the product of threats, promises, coercion, and intimidation. We do not agree.

### A. Custody

■■■ Under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), a defendant's statements made during a custodial police interrogation are inadmissible as evidence in a criminal case unless the prosecution establishes that the defendant was advised of certain constitutional rights and waived those rights. Before a *Miranda* advisement is required, there must have been "such a restriction on a person's freedom as to render him 'in custody.'" *People v. Matheny,* 46 P.3d 453, 463 (Colo.2002).

■■■ Determining whether a person is in custody requires the trial court to establish the historical circumstances of the interrogation and then consider whether there was a formal arrest or restraint of movement tanta-

mount to a formal arrest. *People v. Minjarez,* 81 P.3d 348 (Colo.2003).

■■■ In reviewing the trial court's determination, we will not disturb its findings of fact so long as they are supported by competent evidence in the record. In reviewing the trial court's legal conclusion, we need ask only whether a reasonable person in the defendant's position would believe that his freedom of action has been limited to the degree associated with a formal arrest. *People v. Minjarez, supra.*

■■■ The question of custody turns on an objective assessment, not on the subjective beliefs of either the defendant or the police. *People v. Thiret,* 685 P.2d 193 (Colo.1984); *People v. Wallace,* 97 P.3d 262 (Colo.App. 2004). In short, our review considers the totality of the circumstances. *People v. O'Hearn,* 931 P.2d 1168 (Colo.1997).

The following factors are applicable in evaluating the totality of the circumstances: the time, place, and purpose of the encounter; the persons present during the interrogation; the words spoken by the officer to the defendant; the officer's tone of voice and general demeanor; the length and mood of the interrogation; any limitation of movement or other form of restraint placed on the defendant during the interrogation; the officer's response to any questions asked by the defendant; any directions given to the defendant during the interrogation; and the defendant's verbal or nonverbal response to such directions. *People v. O'Hearn, supra.*

Defendant contends a reasonable person in her position would not have felt free to leave the police station because the detectives did not tell her the security code required to exit the building. However, the record reveals that when defendant arrived at the police station, the detectives told her that she was free to leave at any time and reminded her of this several times during the questioning. Defendant did not ask to leave or request the security code.

In addition, defendant voluntarily appeared at the police station in the afternoon; the tone of voice during the interrogation was conversational throughout, although it is clear that the detectives did not believe de-

fendant; the interrogation lasted only an hour; there was no limitation upon defendant's movement; and no directions were given to defendant before she confessed. We therefore conclude that a reasonable person in defendant's position would not have believed herself at the time of questioning to have been so restrained that the interview was tantamount to a formal arrest. Thus, we conclude that defendant was not in custody for *Miranda* purposes. *See People v. Wallace, supra.*

### B. Waiver

A defendant may waive the right to remain silent and right to counsel, but such a waiver must be knowing, intelligent, and voluntary. *Miranda v. Arizona, supra.* The validity of a waiver is evaluated under the totality of the circumstances. *People v. Platt,* 81 P.3d 1060 (Colo.2004); *People v. Al–Yousif,* 49 P.3d 1165 (Colo.2002).

Defendant contends her waiver was invalid because the detectives told her she was a suspect in the bomb threats and made references to the tragedies at Columbine High School and the World Trade Center, implying that she would be viewed in a light similar to the perpetrators of those crimes. However, when the detectives read defendant her *Miranda* warnings, she stated that she understood her rights and then relinquished them both orally and in writing. There is no evidence that the detectives' references to past terrorist acts affected defendant's free and deliberate choice to waive her rights. Thus, we agree with the trial court's conclusion that she validly waived her *Miranda* rights.

### C. Coercion

For a confession to be involuntary, police coercion must have played a significant role in obtaining it. *People v. Wickham,* 53 P.3d 691 (Colo.App.2001)(citing *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); cases suppressing confessions have contained a substantial element of coercive police conduct). The inquiry is whether the defendant's will was overborne by mentally or physically coercive conduct. *People v. Valdez,* 969 P.2d

208 (Colo.1998); *People v. Wickham, supra.* But even when there is a causal connection between police misconduct and the defendant's confession, there is not an automatic due process violation. Instead, the court must still consider the totality of the circumstances. *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); *Colorado v. Connelly, supra; People v. Wickham, supra.*

Defendant contends her confession was coerced because the detectives suggested she could lose her job and her children and because they implied that if she confessed, she would receive only a ticket and a $50 fine, but if she did not confess, she would face federal charges and fifteen years in prison. We disagree.

The record reveals that the detectives told defendant that the bomb threats could be charged as a state or federal offense and that the FBI takes bomb threats very seriously, both true statements. They explained that the punishment upon conviction would be much more severe if the charges were brought at the federal level. Defendant stated that she understood, but then asked, "Even though I know it wasn't me, do I say it was me so this doesn't go federal?" One of the detectives replied, "Like I said, there's no question in my mind that you're lying, but if you want to sit there and lie, that's fine, we can arrest you right now and we can go either way, it's up to us."

The detectives did not directly threaten that defendant's children would be taken away. Rather, they asked questions of defendant, "Do you want to ruin your life on a stupid prank ... [?] Do you want to lose your children?"

While we do not condone the detectives' implication that they were responsible for the charging decision, we see no indication that this point caused defendant to confess. Instead, she continued to deny responsibility. Later in the interrogation, the detectives told defendant that they were not going to keep her case. When defendant said, "So you're saying it's in my best interest to admit even if—," one of the detectives interrupted her and replied, "No, we're saying it's in your

best interest to tell us what happened and why, so I can put it in my report, so when you go in front of a judge, it says '[defendant] did this because . . . .' " Defendant then confessed.

The trial court found that, under the totality of the circumstances, any threats or promises did not play a significant role in inducing defendant to confess. Rather, the detectives repeatedly confronted defendant with inconsistencies in her story and urged her that telling the truth was in her best interest. *See People v. Stephenson,* 56 P.3d 1112 (Colo.App.2001)(giving the defendant an "opportunity" to confess was not an implied promise of leniency). The trial court also found that defendant understood and waived her *Miranda* rights, had the opportunity to confer with counsel, and was mentally and physically alert; the interrogation was brief, lasting approximately one hour; there was nothing coercive about the physical environment of the interrogation room; and defendant had prior experience with the criminal justice system.

The trial court's findings of fact are supported by competent evidence in the record, and it employed the proper legal standard. Accordingly, we reject defendant's contention.

### III. Second Written Statement

Following her confession to the detectives, defendant wrote out a statement in which she took responsibility for making two of the four bomb threats. During the booking process, the booking officer questioned defendant further, seeking to clarify some perceived ambiguities in her original written statement. The officer wrote down defendant's responses. After this interrogation, while being fingerprinted, defendant asked for permission to write out a new statement, in which she took responsibility for all four of the telephone threats.

The trial court suppressed defendant's statements to the booking officer as having been taken in violation of *Miranda v. Arizona, supra,* but refused to suppress her second written statement because it concluded that the statement was not made in re-sponse to interrogation and therefore *Miranda* did not apply.

■ Defendant asserts the trial court erred in denying the motion to suppress her second written confession because it was the fruit of the illegal interrogation by the booking officer. Because we conclude that there was no violation of *Miranda,* we disagree.

■ Numerous courts have rejected the argument that the passage of time alone invalidates previously given *Miranda* warnings. "The mere passage of time ... does not compromise a *Miranda* warning. Courts have consistently upheld the integrity of *Miranda* warnings even in cases where 'several hours' have elapsed between the reading of the warning and the interrogation." *United States v. Frankson,* 83 F.3d 79, 83 (4th Cir. 1996) (quoting *United States v. Diaz,* 814 F.2d 454, 461 (7th Cir.1987)); *see also United States v. Weekley,* 130 F.3d 747, 751 (6th Cir.1997) (listing cases).

In *United States v. Andaverde,* 64 F.3d 1305 (9th Cir.1995), for example, the court determined that new warnings were not required when the defendant was interviewed the day after the warnings had been given.

In *Wyrick v. Fields,* 459 U.S. 42, 103 S.Ct. 394, 74 L.Ed.2d 214 (1982), the defendant was given *Miranda* warnings before undergoing a polygraph test and agreed to take the test without counsel present. At the conclusion of the test less than two hours later, he was told that the test indicated some deception. He then made incriminating statements to an investigating agent. At that point, the defendant was given *Miranda* warnings again and was questioned by a different agent and a police chief, to whom he repeated his incriminating statements.

The defendant sought to suppress the testimony of the two agents and the police chief regarding his statements, arguing that they were made in violation of his right to counsel. The state courts denied suppression on the ground that the defendant had been advised of his rights and had waived them. On federal habeas review, the circuit court acknowledged that the defendant had waived his right to counsel during the test, but held that he had not done so with respect to his post-

test interrogation because he had not been given "meaningfully timed" *Miranda* warnings.

On certiorari review, the Supreme Court held that the circuit court had erred in failing to examine the totality of the circumstances, and determined that the defendant had validly waived his right to have counsel present at "post-test" questioning, unless the circumstances changed so seriously that his answers no longer were voluntary, or unless he no longer was making a knowing and intelligent relinquishment or abandonment of his rights. In making this assessment, the Court looked to whether the character of the interrogation had changed significantly, and whether the questions put to the defendant subsequently would have caused him to forget the rights of which he had been advised and which he had previously understood.

Applying that test here, we conclude the totality of the circumstances surrounding defendant's interrogation by the booking officer clearly indicates that her statements were not rendered inadmissible by her failure to receive supplemental *Miranda* warnings. The character of the interrogation did not change significantly, the questioning merely concerned clarification of her previously given statement, which had followed proper *Miranda* warnings and waiver of defendant's rights, and none of the questions put to her subsequently would have caused her to forget those rights.

Hence, the trial court erroneously suppressed defendant's statements to the booking officer. Having concluded that the interrogation by the booking officer was not illegal, we necessarily reject defendant's contention that the court erred in denying the motion to suppress her second written confession.

## IV. Detectives' "Promise"

■ Defendant next asserts she is entitled to specific performance of the "promise" the detectives made to her that the charge would result in a misdemeanor conviction and a $50 fine. The People argue that defendant failed to raise this issue in the trial court and is therefore precluded from asserting it for the first time on appeal. Because resolution of defendant's assertion would require finding facts, which an appellate court generally may not undertake, we agree with the People. *See People v. A.W.*, 982 P.2d 842 (Colo. 1999)(an appellate court is not empowered to make factual findings, absent such findings in the record below); *People v. Elsbach*, 934 P.2d 877 (Colo.App.1997)(trial court determines what, if anything, was said that might be interpreted as a promise; that court's function is to weigh the evidence and to make factual findings resolving the dispute about what was communicated).

## V. Aggravated Range Sentence

■ Defendant contends the trial court violated her rights to due process and to trial by jury by impermissibly imposing an aggravated range sentence. We disagree.

■ Appellate review of constitutional challenges to sentencing determinations is de novo. *Lopez v. People*, 113 P.3d 713 (Colo. 2005).

False reporting of explosives is a class six felony, § 18–8–110, C.R.S.2005, which carries a presumptive range sentence of one year to eighteen months. Section 18–1.3–401(1)(a)(V)(A), C.R.S.2005. However, if the court finds that extraordinary aggravating circumstances are present, it may impose a sentence of up to twice the maximum authorized in the presumptive range. Section 18–1.3–401(6), C.R.S.2005.

Defendant contends that her aggravated sentence is unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). The Supreme Court held in *Apprendi*, and reiterated in *Blakely*, that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Blakely v. Washington, supra*, 542 U.S. at 301, 124 S.Ct. at 2536; *Apprendi v. New Jersey, supra*, 530 U.S. at 490, 120 S.Ct. at 2362–63.

In *Lopez v. People, supra*, the court held that at least four types of facts comply with

the rule of *Apprendi* and *Blakely* and are thus valid considerations in aggravated sentencing: (1) facts admitted by the defendant; (2) facts found by the jury; (3) facts found by the court after the defendant stipulates to judicial fact finding; and (4) the fact of a prior conviction. The court further held that a discretionary aggravated range sentence pursuant to § 18–1.3–401(6) is constitutional if the trial court relied on any one of these permissible factors, even if it also considered factors that did not fall into one of the four categories. Thus, under *Lopez*, the imposition of a discretionary aggravated range sentence based at least in part on a defendant's prior convictions would not violate the rule of *Apprendi* and *Blakely*.

▪ Moreover, the trial court may constitutionally rely upon a misdemeanor conviction. *People v. Martinez*, 128 P.3d 291 (Colo. App.2005). In *People v. Martinez*, a division of this court affirmed the defendant's aggravated range sentence based on his prior misdemeanor convictions. In deciding an issue of first impression, the division noted that other jurisdictions have held that prior misdemeanor convictions fall within the *Apprendi* prior conviction exception. *See State v. Aleman*, 210 Ariz. 232, 109 P.3d 571 (Ct.App.2005); *Freeze v. State*, 827 N.E.2d 600 (Ind.Ct.App. 2005); *State v. Kendall*, 274 Kan. 1003, 58 P.3d 660 (2002); *State v. Weldele*, 315 Mont. 452, 69 P.3d 1162 (2003); *State v. Clarke*, 124 Wash.App. 893, 103 P.3d 262 (2004)(*review granted* July 12, 2005). The division also noted that jurisdictions declining to allow sentence enhancement based on prior misdemeanor convictions have focused on the fact that the prior convictions were unrelated to the instant offense. *See Edwards v. State*, 822 N.E.2d 1106 (Ind.Ct.App.2005)(reliance on defendant's prior criminal history insufficient to satisfy *Apprendi* and *Blakely* where criminal history consisted of only one unrelated misdemeanor battery conviction); *Traylor v. State*, 817 N.E.2d 611 (Ind.Ct.App.2004)(single misdemeanor battery conviction five years before instant conviction for drug dealing and nuisance was insufficient to enhance sentence).

In *People v. Martinez*, the defendant was convicted of vehicular assault reckless driving, in exchange for the dismissal of another charge of vehicular assault-DUI. The trial court imposed an aggravated range sentence based in part on his three prior misdemeanor convictions, two of which were for driving while ability impaired, and one of which was for driving under the influence. On appeal, the division did not decide whether prior misdemeanor convictions had to be related to the offense at issue because, in the case before it, the defendant's prior convictions all involved the same type of conduct as the offense for which he was being sentenced. Thus, regardless of whether "relatedness" was required, reliance on prior misdemeanor convictions to enhance the defendant's sentence did not violate his rights under *Apprendi* and *Blakely*.

Here, defendant's prior misdemeanor conviction was for theft, which is unrelated to false reporting of explosives. However, we do not perceive a requirement of relatedness between the prior conviction and the instant offense to invoke the *Apprendi* prior conviction exception. The rationale for the prior conviction exception is that the previous conviction has been established through procedures satisfying the defendant's Sixth Amendment rights, whether the conviction was obtained by jury verdict or plea agreement, and thus no further jury involvement is required. *See Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). To conclude that an unrelated prior misdemeanor conviction cannot be used to justify an aggravated range sentence would in effect require fact finding at the trial court level as to the similarity of a prior misdemeanor conviction and the instant offense. But the fact of a prior conviction is an exception to the rule of *Apprendi* precisely because it requires no additional fact finding.

Thus, we hold that regardless of its similarity to the instant offense, the fact of a prior misdemeanor conviction falls within the prior conviction exception to the rule of *Apprendi*.

Here, the trial court based defendant's sentence in part on her conviction of misdemeanor theft in Texas. Accordingly, defendant's aggravated range sentence is constitutional.

On petition for rehearing, defendant contends that this result is contrary to People v. Isaacks, 133 P.3d 1190 (Colo. 2006). There, the court concluded that a sentencing court may not use a defendant's admissions to sentence in the aggravated range unless the defendant knowingly, voluntarily, and intelligently waives the Sixth Amendment right to have a jury find the facts that support the aggravated sentence. However, that case dealt with a sentence that was aggravated because of the facts of the underlying offense. Thus, *Isaacks* considered facts that were assertedly *Blakely*-complaint, whereas here, the aggravation involves a prior conviction, which is Blakely-exempt. *See Lopez v. People, supra; People v. French,* 141 P.3d 856 (Colo.App. 2005). We do not read *Isaacks* to apply to *Blakely*-exempt prior convictions.

The judgment and sentence are affirmed.

Judge VOGT and Judge FURMAN concur.